# UNITED STATES DISTRICT COURT
## for the SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

KARNISHA M. WILLIAMS,                  )
                                   )
           Plaintiff,                  )
                                   )
          *vs.*                  )    **CAUSE NO. 1:12-cv-1715-SEB-DKL**
                                   )
**CAROLYN W. COLVIN, Acting**                  )
**Commissioner of Social Security,**                  )
                                   )
          Defendant.                  )

## REPORT AND RECOMMENDATION

In September 2005, plaintiff Karnisha Williams applied for disability benefits under the Social Security Act, alleging that she became disabled on March 31, 1981 as a result of mental retardation and low-back pain. The defendant Commissioner of Social Security finally denied her application in 2008. Ms. Williams sought judicial review and, in June 2010, this Court reversed the Commissioner's denial and remanded the case for re-evaluation. *Williams v. Astrue*, No. 1:08-cv-1353-JMS-TAB, *Entry* [doc. 33] (S.D. Ind., June 29, 2010) ("*Entry*"). On remand, the Commissioner again finally denied Ms. Williams' application, in September 2012, and she now seeks judicial review of that denial by this suit. The assigned district judge referred this Cause to this magistrate judge for preparation of a report and recommendation.

### Standards

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. §

405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A). A person will be determined to be disabled only if her impairments "are of such severity

that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. § 404.1520. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id.* At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the applicant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related

physical and mental limitations and is categorized as sedentary, light, medium, or heavy. 20 C.F.R. § 404.1545. At the fourth step, if the applicant has the RFC to perform her past relevant work, then she is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy.

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. 20 C.F.R. §§ 404.1569 and 1569a. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level, then the grids may not be used to determine disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Id.*; *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may still be used as an advisory

guideline in such cases.  20 C.F.R. § 404.1569.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist.  If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts.  If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1]  An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision.  If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review.  42 U.S.C. § 405(g).  If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

## Background

The pre-remand background of this case may be found in the Court's 2010 *Entry*. The Court reversed the Commissioner's first denial of Ms. Williams' application and remanded for re-evaluation because of three errors in the previous ALJ's decision:  (1) an inadequate evaluation of Ms. Williams' credibility; (2) lack of expert medical support for

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration.  20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*).  Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

the finding that the only limitation caused by Ms. Williams' mental impairment was a restriction to simple, routine tasks; and (3) the lack of expert vocational opinion for the effect of Ms. Williams' non-exertional limitations on the number of jobs that she can perform. The Court also instructed the Commissioner to determine whether certain substantive exhibits that appeared to be missing from the original record should be added and, if so, to re-evaluate Ms. Williams' application in light of the new exhibits. The Court rejected Ms. Williams' arguments that the previous ALJ's decision violated due process; that the ALJ erred by not calling a medical advisor on the issue of medical equivalence to the Listings; and that the ALJ ignored, misstated, and rejected several items of evidence.

On remand, the Commissioner's Appeals Council assigned Ms. Williams' application to a new ALJ "for further proceedings consistent with the order of the court," (R. 203), and instructed the ALJ to offer Ms. Williams a new hearing and to "take any further action needed to complete the administrative record and issue a new decision," (*id.*) The ALJ held a new hearing in December 2010, during which a medical expert and vocational expert testified. (R. 354.) The ALJ issued his decision finding Ms. Williams not disabled in January 2011. (R. 181.) Ms. Williams asked for review and the Appeals Council summarily affirmed the decision, rendering it the final decision of the Commissioner on her application. (R. 173). Ms. Williams was represented throughout the remand proceedings, including the hearing, by current counsel, who also represented her during the pre-remand proceedings. Ms. Williams filed the present suit to obtain judicial review

of the Commissioner's decision.

At step one of the five-step sequential evaluation process, the ALJ found that Ms. Williams has not engaged in substantial gainful activity since her alleged onset date in August 1999. At step two, he found that Ms. Williams has severe impairments of "cognitive disorders variously diagnosed as mild mental retardation or borderline intellectual functioning." While the first ALJ had found that Ms. Williams has a severe impairment of low-back pain, (R. 14), this ALJ found that she has no such impairment. He also found that her newly alleged depression was not an impairment and that her obesity, while an impairment, is not severe. At step three, the ALJ found that Ms. Williams' impairments, severe or non-severe, alone or in combination, did not meet or medically equal any of the listed impairments. He made specific findings regarding Listings 12.02 (organic mental disorders) and 12.05 (mental retardation).

For the purposes of steps four and five, the ALJ determined Ms. Williams' RFC. He found that she retained the capacity to perform work at all exertional levels with the following additional nonexertional limitations: **(1)** no more than simple, routine, repetitive tasks, requiring minimal independent judgment or analysis; **(2)** daily work goals that are static and predictable; and **(3)** ten- to fifteen-minute breaks every two-hour work period.

At step four, the ALJ found that Ms. Williams had no past relevant work. At step five, the ALJ called on the vocational expert to opine on how many jobs exist that satisfy

Ms. Williams' vocational characteristics and nonexertional limitations. The vocational expert testified that jobs exist in significant numbers in the national economy that a person with Ms. Williams' age, education, work experience, and defined RFC could perform. She specifically identified the jobs of "production assembly," with 2,000 positions in Indiana and 88,600 nationally; "machine tender," with 2,900 in Indiana and 118,800 nationally; and "light unskilled inspector," with 2,900 in Indiana and 69,800 nationally. (R. 382-83.) Based on this testimony, the ALJ found that Ms. Williams was not disabled through the date of his decision.

## Discussion

Ms. Williams argues that the ALJ committed errors in his step-three Listings determination, his credibility determination, and his step-five hypothetical to the vocational expert.

### 1. Listing satisfaction.

Ms. Williams argues that substantial evidence does not support the ALJ's finding at step three that her combined impairments of mental retardation, obesity, and chronic lower-back pain do not meet or medically equal "any listed impairment." Because she addresses only Listings 12.05 B and C, so does the Court.

**Diagnostic definition.** In his discussion of Listings satisfaction, the ALJ initially and specifically found that "the evidence does not establish the 'significantly subaverage

general intellectual functioning with deficits in adaptive function' needed to satisfy the requirements of Listing 12.05."[2] (R. 188.) Listing 12.05 (mental retardation) consists of two parts, both of which must be satisfied for the listing to apply: first, an introductory paragraph containing a diagnostic description, and, second, four alternative severity criteria, one of which must be satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A. The diagnostic description reads:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Thus, the ALJ found that Ms. Williams failed to satisfy the diagnostic criteria. He found that any deficits in her adaptive functioning were not significant and that her level of adaptive function was inconsistent with significantly subaverage general intellectual functioning, and he supported these findings with a thorough discussion and evaluation of the evidence. He specifically noted Ms. Williams' ability to follow instructions, her lack of dependence on others for her personal and household needs, and other evidence in the record that is inconsistent with her mother's descriptions that Ms. Williams is heavily depended on her.[3] (R. 188-89, 192.)

---

[2] Also see (R. 190): "Again, while her I.Q scores, generally falling between 60 and 70, might suggest mild mental retardation, her higher adaptive and social functioning would argue strongly against such a finding."

[3] The ALJ found that the evidence showed, *inter alia*, that Ms. Williams was living independently and separately from her mother at the time of her mother's statements; that Ms. Williams herself stated that she was not dependent on her mother or anyone else; that Ms. Williams sustained an active and busy lifestyle; that, although Ms. Williams and some of her children were living with her mother at the time of the hearing, her mother worked two jobs, was away from the home most of the time, and, therefore,

While Ms. Williams addresses some of the ALJ's supporting evidentiary inferences in the context of other arguments, she does not directly address or challenge this initial finding on Listing 12.05's diagnostic criteria in her primary brief. But it is a crucial finding: the finding that the initial diagnostic description is not satisfied renders moot the severity alternatives of paragraphs B and C on which Ms. Williams bases her Listings argument. Ms. Williams' Listings argument thus fails on this ground alone.

For the first time in her reply (and thus forfeited), Ms. Williams presents two challenges to the ALJ's finding regarding the diagnostic criteria. First, she argues that the second ALJ made the same error that the Court found that the first ALJ had made: relying on Dr. Vandivier's opinion that Ms. Williams was able to function independently. (*Plaintiff's Response to Defendant's Memorandum* [doc. 28] ("*Reply*") at 3-4.) In its *Entry*, the Court faulted the first ALJ for relying on the doctor's opinion because it was rendered before Ms. Williams' testimony and her mother's statements were added to the record. The Court found that the ALJ should not have relied solely on Dr. Vandivier's opinion in light of this additional evidence, but he should have undertaken a direct evaluation of the new evidence. Contrary to Ms. Williams' assertion, the second ALJ's decision demonstrates that he did not simply rely on Dr. Vandivier's opinion but directly evaluated and addressed the record evidence regarding Ms. Williams' ability to function independently, including her and her mothers' statements. The second ALJ thus corrected that error that the Court

could not render significant assistance; and that Ms. Williams was providing care for her grandmother who was suffering with Alzheimers.

found in the previous ALJ's decision.

Second, Ms. Williams argues that "[t]he ALJ and the defendant's Memorandum also argue misleadingly that the claimant's present supposed non-impaired adaptive functioning at age 32 prove[s] that she did not have deficits in adaptive functioning before age 22. This overlooks that her functioning may have improved since age 22, but that would not disprove that she had significant deficits in adaptive functioning before age 22." (*Reply* at 5.) Ms. Williams does not provide a citation to where, in the ALJ's decision, he found that Ms. Williams' lack of current adaptive-functioning deficits disproves deficits existing prior to age 22 and the Court found no such finding. Regardless, Listing 12.05 requires *current* deficits in adaptive functioning and then only evidence that the current deficits were *initially* manifested during the claimant's developmental (pre-age 22) period. "The requirement of early onset and the reference to the claimant's 'developmental period' seem intended to limit coverage to an innate condition, rather than a condition resulting from a disease or accident in adulthood." *Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007) (citation omitted). Because the ALJ found no significant current adaptive-functioning deficits, Listing 12.05's diagnostic criteria were not satisfied, and Ms. Williams has not shown error in that finding.

**Litany of ignored and selectively considered evidence.** As is the usual practice of Ms. Williams' counsel, he provides a list of evidence that the ALJ assertedly ignored or only selectively considered. (*Plaintiff's Brief in Support of Complaint to Review Decision of*

*Social Security Administration* [doc. 20] ("*Brief*") at 15-17.) Counsel simply asserts that the evidence proves that Ms. Williams is disabled. An ALJ is not required to articulate his evaluation of every piece of evidence or every item of information in every piece of evidence. Because no developed argument accompanies this litany, any possible argument is forfeited.

**Paragraph B criteria.** The B alternative for satisfying Listing 12.05's severity requirement is "A valid verbal, performance, or full scale IQ of 59 or less." Ms. Williams argues that the ALJ committed error by discounting Dr. Vandivier's IQ test result showing a full-scale IQ of 58, (R. 102), and by ignoring or overlooking four other IQ scores in the record of 59 or less, (R. 256 (two 55s) and 279 (one 59 and one 58)).

Ms. Williams argues that the current ALJ improperly found that Dr. Vandivier's IQ test result of 58 was not valid because the doctor characterized it as "provisional," which is the same error that the Court found the previous ALJ had made. In its *Entry*, the Court faulted the ALJ for writing that Dr. Vandivier concluded that his administered IQ score of 58 was invalid when, in fact, he described it as only "provisional" because he could not determine whether it was valid or invalid due to what appeared to be Ms. Williams' poor effort. Dr. Vandivier also wrote that, if the score was valid, then it shows that she has significant adaptive behavior deficits. *Entry* at 23. The *Entry* did not find that a "provisional" score is a valid score, or otherwise satisfies paragraph B. Rather, it faulted the first ALJ for mischaracterizing Dr. Vandivier's opinion of his IQ test results' validity:

the ALJ wrote that the doctor found the result invalid when, in fact, the doctor found that he could not determine whether it was valid or not.  Because the current ALJ accurately described Dr. Vandivier's opinion that his IQ test result of 58 was provisional, in the sense of indeterminate, because of Ms. Williams' perceived lack of effort and because such a low score was inconsistent with her apparent higher level of functioning (namely, living independently with three small children), (R. 189), the current ALJ did not err in his characterization of Dr. Vandivier's opinion.

At any rate, such an error would not help Ms. Williams.  Paragraph B of Listing 12.05 requires a "valid" IQ score of 59 or less, not a "provisional" or indeterminate score; while a provisional score is not invalid, it also is not a valid score.  In addition, the ALJ evaluated the evidence of record and determined that Dr. Vandivier's score was not a valid score because of Ms. Williams' inconsistent level of adaptive functioning and her lack of effort on the test.

Next, Ms. Williams contends that the ALJ's finding that paragraph B was not satisfied was erroneous because he ignored the four other IQ scores of 59 or less.  (*Reply* at 4-5.)  The ALJ did not ignore the other scores.  He found that "all of the other I.Q. scores material to this record ranged between 60 and 70." (R. 189.)  The record contains the results of nine IQ tests, six of which had results in the 60-70 range and three with results of 59 or below.  The three 59-or-below scores consist of one (Dr. Vandivier's) which was compromised because of perceived lack of effort and two from Ms. Williams' childhood.

(R. 189-90.) The ALJ had the responsibility to resolve the conflicts among these differing IQ scores and he did so. It would have been preferable had he more clearly articulated his evaluation, but it is apparent that the he credited the most recent scores as better indicating Ms. Williams' current status; discounted Dr. Vandivier's score as not valid; and discounted the earlier low scores because they were more remote in time, were inconsistent with the evidence showing Ms. Williams' greater degree of adaptive functioning than those scores indicated, and because, "[w]hile it is possible to intentionally score low, it would be highly unlikely for a person to consistently score above her actual level of functioning." (R. 189.) In essence, the ALJ found that Ms. Williams' earlier low IQ scores were not "valid," as required by paragraph B, and substantial evidence supports his decision. Courts defer to the Commissioner's resolutions of such conflicts in the evidence so long as they are supported by substantial evidence and, here, they are.

**Paragraph C criteria.** The paragraph-C alternative for satisfying Listing 12.05's severity requirement is "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . ." The Commissioner has defined a "significant work-related limitation of function" to be a "severe" impairment, as defined by 20 C.F.R. §§ 404.1520(c) and 416.920(c) for purposes of the step-two analysis. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A. As noted above, the ALJ found that Ms. Williams has no other physical or mental severe impairment. Ms. Williams' only "argument" is to reassert that she has obesity and

lower-back pain as additional impairments and to point to two pieces of evidence — one 2004 clinic note recording Ms. Williams' weight and complaint of low-back pain and one 2009 hospital note of her complaint of low-back pain. (*Brief* at 18.) Because she does not address, let alone explain any errors in, the ALJ's articulated reasons for rejecting her obesity and low-back pain as severe impairments, she has failed to support her assertion of error with any argument.

Ms. Williams has not shown error in the ALJ's step-three Listings determination.

## 2. Credibility Determination.

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's symptoms has been shown, an ALJ must evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record.

Here, the ALJ devoted the better part of four pages evaluating the credibility of Ms. Williams' statements about the severity of her symptoms. Ignoring her undeveloped, conclusory assertions of error, Ms. Williams presents only two specific objections. First,

she repeats that the ALJ ignored or rejected all of the IQ tests that meet the criteria of Listing 12.05, which corroborate her symptom allegations. However, as discussed above, the ALJ's evaluation of her IQ scores is supported by substantial evidence. Second, relying on *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012), she argues that the ALJ improperly arrived at his RFC determination first, then reasoned backward to make a consistent credibility determination. In *Bjornson*, the Court of Appeals criticized the "template" that ALJs sometimes employ when writing the credibility sections of their decisions because it "implies" that they engaged in the described backward determinations. However, the Court later held in *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012), that use of the template is harmless if the ALJ otherwise adequately explains his findings. In this case, the ALJ articulated his thorough evaluation of Ms. Williams' credibility. Because Ms. Williams asserts no other error in the ALJ's evaluation, she has failed to show error in his credibility determination.

### 3. Hypothetical question.

Ms. Williams argues that the ALJ's step-five determination is erroneous because he failed to inform the vocational expert, by way of his hypothetical, of all of her impairments. Without the full picture of her functional limits, the vocational expert's advice was deficient and the ALJ's step-five finding that significant numbers of jobs exist that she can perform is not supported by substantial evidence. (*Brief* at 24-25; *Reply* at 7.) Ms. Williams argues three errors.

**Omission of limitations.** First, she asserts that the ALJ's residual functional capacity assessment "omits the limitations from her extremely limited intelligence, her obesity, and her chronic low back pain limiting her standing and walking." (*Brief* at 24.) That is all, except for brief boilerplate statements of law. The ALJ articulated his evaluation of Ms. Williams' intelligence, obesity, and low-back pain. Because Ms. Williams fails to articulate any error in his evaluation, no error is shown.

*O'Connor-Spinner* **violation.** Second, Ms. Williams argues that the ALJ's hypothetical to the vocational expert failed to account for the deficiencies that he found in her social functioning and concentration, persistence, or pace. The ALJ wrote that Ms. Williams has mild limitations in social functioning, (R. 189, 191), and moderate limitations in concentration, persistence, or pace, (R. 190, 191). His RFC finding consisted of the following:

> Accordingly, after careful consideration of the entire record, I find that the claimant retains the residual functional capacity to perform work at all exertional levels, but has additional nonexertional limitations that would permit no more than simple, routine, repetitive tasks requiring minimal independent judgment or analysis, with daily work goals that were static and predictable. She would be able to work for periods of two hours, with a break of 10 to 15 minutes between each period of work.

(R. 195-96.) His hypothetical to the vocational expert at the hearing consisted of the following:

> Assume an individual of the claimant's age, education and work experience who can perform a job consistent with simple repetitive tasks requiring minimal independent judgment or analysis to perform. The work goals from day to day should be fairly static and predictable from day to day. The

individual can work at stretches of two hours, requiring a ten to fifteen minute break between each stretch of work to refresh ones ability to perform work-like tasks. With these limitations, could any work be performed in the competitive work economy?

(R. 381-82.)

Ms. Williams argues that the ALJ's inclusion of work limitations in his hypothetical, instead of simply informing the vocational expert that she has mild limitations of social functioning and moderate limitations of concentration, persistence, or pace, violated the rule declared by the Court of Appeals for the Seventh Circuit in *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010):

> Our cases generally have required the ALJ to orient the VE [vocational expert] to the totality of a claimant's limitations. Among the limitations the VE must consider are deficiencies of concentration, persistence and pace. Our cases, taken together, suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical.
>
> \*    \*    \*
>
> In most cases, however, employing terms like "simple, repetitive tasks" on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace. The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity.
>
> \*    \*    \*
>
> As discussed, limiting a hypothetical to simple, repetitive work does not necessarily address deficiencies of concentration, persistence and pace.
>
> We acknowledge that there may be instances where a lapse on the part of the ALJ in framing the hypothetical will not result in a remand. Yet, for most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on those limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do.

*O'Connor-Spinner*, 627 F.3d at 619-21 (citations and footnote omitted). *O'Connor-Spinner*

recognized two exceptions to its rule. First, if the record reveals that the vocational expert

independently reviewed the medical evidence or heard the medical testimony that was

directly relevant to the deficiencies, then the vocational expert's familiarity with the

claimant's limitations can be assumed despite gaps in the ALJ's hypotheticals. *Id.* at 619.

However, if an ALJ poses a series of increasingly restrictive hypotheticals to the expert,

then the assumption is that the expert's attention was focused on the hypotheticals and not

other evidence in the record or testimony. The second exception is that, if the ALJ's

alternate phrasing accurately excludes the functions that the claimant cannot perform due

to her deficiencies, then the vocational expert has been fully advised. In other words, when

the ALJ's hypothetical excludes the triggers or causes of the claimant's deficiencies, then

the deficiencies have been accommodated. The example that *O'Connor-Spinner* cited as the

most frequent application of this second exception is when the evidence shows that a

claimant's deficiencies in concentration, persistence, or pace are stress- or panic-related and

the ALJ's hypothetical restricts the claimant to low-stress work. *Id.* at 620.

The ALJ's hypothetical falls within *O'Connor-Spinner*'s second exception. When the

ALJ wrote that Ms. Williams has "mild" limitations in social functioning and "moderate"

limitations in concentration, persistence, or pace, he was summarizing her limitations for

the purposes of, and in the short-hand terminology of, the listings-severity criteria. When

he described her limitations for the purpose of his RFC finding, he articulated the details

of which his previous descriptions were only a short-hand summary. He wrote:

> Although the claimant is not disabled, and has no severe physical or psychiatric impairments, she still has additional problems related to her cognitive impairment that significantly limits her ability to do basic work-related activities. In particular, although the claimant is not mentally deficient, the clinical record does consistently show some slower processes in thinking, and some problems in verbal comprehension as well. Thus, the claimant's borderline intelligence, as indicated by her clinical history and adaptive functioning, would not permit the performance of detailed or complex tasks. The claimant also would be able to do only very simple analysis in performing job duties. She also likely would not do well in a rapidly changing work environment. As a guard against the possibility of mental fatigue, she also would need additional break periods, in addition to her regular break and lunch periods.

(R. 195.) This was the ALJ's summation of his evaluation of the evidence of record regarding Ms. Williams' cognitive abilities and her concentration, persistence, and pace that he articulated in the previous pages of his decision. (R. 194-95.) The ALJ also wrote: "Hence, for all these reasons, I conclude that the evidence does not indicate any significant limitations in social functioning," (R. 194), which summarizes his immediately previous evaluation of the evidence regarding her social functioning, (R. 193).

Because the ALJ's RFC finding and hypothetical directly track his detailed findings of her functional limitations and, thus, exclude "the triggers or causes of the claimant's deficiencies," his "alternate phrasing accurately excludes the functions that the claimant cannot perform due to [her] deficiencies" and "the vocational expert has been fully advised" as described in *O'Connor-Spinner*'s second exception. No error has been shown.

**Omission of rest breaks.** Ms. Williams also argues that the ALJ's work restriction

that "[a]s a guard against the possibility of mental fatigue, she also would need additional break periods, in addition to her regular break and lunch periods," (R. 195), does not appear in either the ALJ's RFC assessment or his hypothetical question to the vocational expert. (*Reply* at 7.) However, the quotations of both above show that both contain the ALJ's requirement of 10- to 15-minute rest breaks every 2-hour work period.

No error has been shown in the ALJ's hypothetical question.

## Conclusion

The ALJ's decision is supported by substantial evidence and has not been shown to be the result of legal error. This magistrate judge recommends that the decision of the Commissioner denying Ms. Williams' application for disability benefits be **affirmed**.

## Notice regarding objections

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur*

*v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214

F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**DONE this date:** 02/26/2014

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

**Distribution to all ECF-registered counsel of record** *via* **ECF-generated e-mail.**