UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KARNISHA M. WILLIAMS,                    )
                                         )
                    Plaintiff,           )
                                         )
          vs.                            )
                                         )        No. 1:12-cv-01715-SEB-DKL
CAROLYN W. COLVIN,                       )
                                         )
                    Defendant.           )


**ORDER OVERRULING PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATION**

This is an action for judicial review of the final decision of Defendant Commissioner of

Social Security ("Commissioner") finding Plaintiff Karnisha Williams not entitled to disability

benefits under the Social Security Act.  Ms. Williams initially applied for benefits in September

2005, alleging that she became disabled on March 31, 1981 as a result of mental retardation and

low-back pain.  Ms. Williams's application was denied in 2008.  Ms. Williams sought judicial

review of that decision and, in June 2010, this Court reversed the Commissioner's denial and

remanded the case for re-evaluation.  *Williams v. Astrue*, No. 1:08-cv-1353-JMS-TAB*, Entry*

[doc. 33] (S.D. Ind. June, 29, 2010).  On remand, the Commissioner again finally denied Ms.

Williams's in September 2012.  Ms. Williams now seeks judicial review of that denial in this

suit.  This case was referred to Magistrate Judge LaRue for consideration.  On February 26,

2014, Magistrate Judge LaRue issued a report and recommendation that the Commissioner's

decision be upheld because it was supported by substantial evidence and was otherwise in accord

with the law.  This cause is now before the Court on Plaintiff's Objections to the Magistrate

Judge's Report and Recommendation.

# I.     Applicable Law and Standard of Review

To be eligible for benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* § 423(d)(3).  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by a claimant's statement of symptoms."  20 C.F.R. § 404.1508.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability.  20 C.F.R. § 404.1520.  If disability status can be determined at any step in the sequence, an application will not be reviewed further.  *Id.*  At the first step, if the claimant is currently engaged in substantial gainful activity, then he is not disabled.  20 C.F.R. § 404.1520(b).  At the second step, if the claimant's impairments are not severe, then he is not disabled.  20 C.F.R. §§ 404.1520(c).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  *Id*.  Third, if the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant is deemed disabled.  The Listing of Impairments are medical conditions defined by criteria that the Administration has pre-determined are disabling.  20 C.F.R. § 404.1525.  If the claimant's impairments do not satisfy a Listing, then her Residual Functional Capacity ("RFC") will be determined for the purposes of

the next two steps. A claimant's RFC is her ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The claimant bears the burden of proof at steps one through four. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

At the fifth step, considering the claimant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work in the relevant economy. The burden of proof shifts to the Commissioner at step five to prove that there are jobs that exist in the national economy that the claimant can perform. *Id.* For a claimant with purely exertional limitations, the Commissioner may use the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids") to make a disability determination. The grids correlate the claimant's age, work experience, education, and RFC with a finding of "disabled" or "not-disabled." 20 C.F.R. §§ 404.1569, 404.1569a. Exertional limitations are those which only affect a claimant's ability to meet the strength demands of jobs. 20 C.F.R. § 404.1569a(b). If a claimant has non-exertional limitations or exertional limitations that restrict the full range of employment opportunities at his RFC level, then the grids may not be used at this step. Instead, a vocational expert must testify regarding the number of existing jobs for a person with the claimant's particular medical conditions and vocational characteristics. 20 C.F.R. §§ 404.1569, 404.1569a; *Haynes v. Barnhart*, 416 F.3d 621, 629 (7th Cir. 2005); *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994).

We review the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Rice v. Barnhart,* 384 F.3d 363, 368–369 (7th Cir. 2004); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). In our review of the ALJ's decision, we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] own judgment for that of the Commissioner." *Lopez,* 336 F.3d at 539. However, the ALJ's decision must be based upon consideration of "all the relevant evidence," without ignoring probative factors. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In other words, the ALJ must "build an accurate and logical bridge" from the evidence in the record to his or her final conclusion. *Dixon*, 270 F.3d at 1176. We confine the scope of our review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Tumminaro v. Astrue,* 671 F.3d 629, 632 (7th Cir. 2011).

When a party raises specific objections to elements of a magistrate judge's report and recommendation, the district court reviews those elements *de novo,* determining for itself whether the Commissioner's decision as to those issues is supported by substantial evidence or was the result of an error of law. Fed. R. Civ. Pro. 72(b). The district court "makes the ultimate decision to adopt, reject, or modify" the report and recommendation, and it need not accept any portion as binding; the court may, however, defer to those conclusions of the report and recommendation to which timely objections have not been raised by a party. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–761 (7th Cir. 2009).

## II.      Discussion

Ms. Williams objects to the Report and Recommendation on three grounds. First, she contends that the Magistrate Judge erred in affirming the ALJ's finding that the evidence did not prove her mental retardation met the requirements of the introductory paragraph of Listing 12.05.

Second, Ms. Williams challenges the Magistrate Judge's recommendation that the Court uphold the ALJ's credibility finding. Finally, she argues that the Magistrate Judge wrongly affirmed the ALJ's Step Five determination that Ms. Williams could perform some jobs in the national economy. We address these arguments in turn.

### A. The ALJ's Step Three Determination that Plaintiff's Combined Impairments Did Not Meet or Medically Equal Any Listed Impairment

Plaintiff objects to the Magistrate Judge's conclusion that substantial evidence supported the ALJ's finding that Ms. Williams's disability did meet the criteria for Disability Listing 12.05. We agree with the Magistrate Judge that Plaintiff's challenges to the ALJ decision in this respect are without merit.

Listing 12.05 sets forth the criteria necessary to establish that a claimant suffers *per se* disability because of "intellectual disability."[1] The listing consists of two parts: first, an opening "diagnostic description" setting the general contours of the disability type; second, a list of four means by which a claimant may demonstrate that his or her impairments rise to the level of intellectual disability. 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, §§ 12.00A, 1205.

#### 1. The diagnostic criteria

The "intellectual disability" diagnostic description reads as follows:

Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.

*Id.* at § 1205. The ALJ found that Plaintiff failed to meet this description, and thus did not qualify as intellectually disabled—regardless of whether her condition met any of the elements of the second part of the Listing. In support of this determination, the ALJ noted that Plaintiff

---

[1] This listing category was formerly referred to as "mental retardation."

can follow instructions, lives by herself, takes primary responsibility for the care of at least two of her five children, helps provide care for her grandmother who has Alzheimer's disease, and sustains an "active and busy lifestyle." R. 188–189, 192. Although Plaintiff's mother testified that Plaintiff depended on her reminders or assistance to complete basic daily tasks such as bathing, food preparation, and house cleaning, the ALJ noted that this account differed from that provided by Plaintiff herself, who asserted that she was not dependent on her mother or anyone else. The ALJ also noted that the elder Ms. Williams's own busy lifestyle—with two jobs—was inconsistent with the notion that Plaintiff is wholly incapable of caring for herself without her mother's supervision. *Id.*

Plaintiff contends that both the ALJ and the Magistrate Judge wrongly ignored the testimony of Dr. Pitcher, who provided an advisory medical opinion to the ALJ in conjunction with the hearing process. *See* R. 367–369. According to Plaintiff, Dr. Pitcher's low IQ diagnosis establishes that Ms. Williams suffers from "significantly subaverage general intellectual functioning," and the fact that she was placed in special education classes shows that her impairment had an onset before she reached the age of 22. Docket No. 32 at 2 (citing R. 368). Plaintiff urges that this court's decision in *King v. Barnhart,* 2007 WL 968746 (S.D. 2007) is controlling here. Plaintiff characterizes the holding of *King* as follows:

> *King* determined that the "significantly subaverage general intellectual functioning element was proved by the claimant's IQs of 64, and 69. The deficits in adaptive functioning were proved by the claimant's inability to manage his funds independently. The onset of the impairment before age 22 was proved by the claimant's history of placement in special education classes. The facts in *King* are strikingly similar to the facts in the instant case. *King* requires reversal of the instant denial determination.

Docket No. 32 at 2–3.

Plaintiff's reliance on *King* is misplaced. First, the prior decisions of the Southern District of Indiana are not controlling precedent; they do not "require" anything. Second, and more to the point, Plaintiff either misses or willfully misreads a central distinction between *King* and this case. In *King,* the ALJ's medical advisory report did not conclude that the claimant had "subaverage intellectual functioning" *because* he had IQ scores in the 60-70 range; rather, the report urged that the IQ numbers significantly overstated his level of functioning, which was in reality far more impaired. "On the performance IQ test, where Mr. King's score was significantly higher than on the other two IQ tests, Mr. King scored 'extremely high' on the picture completion sub-tests, which 'tended to skew his performance IQ, with the other performance sub-tests being roughly commensurate with the verbal sub-tests,' where his scores put him in the *lowest one percentile of the population*." *King,* 2007 WL 968746, at *3 (emphasis added). Here, by contrast, the ALJ concurred with Dr. Pitcher that Plaintiff's IQ scores *under*stated her functioning level. Although he noted the score numbers, he concluded that other indicia of functioning told a different story. His conclusion did not contradict Dr. Pitcher's report, nor was it without evidentiary support; *King* neither dictates nor even suggests a contrary result.

## 2. The 12.05B and 12.05C criteria

Plaintiff makes only a vague, conclusory objection to the Magistrate Judge's review of the ALJ with respect to the separate "Paragraph B" and "Paragraph C" criteria of Listing 12.05. She alleges that the Magistrate stepped beyond her proper role, engaging in "layperson's review of the psychological testing" and "perform[ing] the role of the fact-finder." Docket No. 32 at 4. The Magistrate did nothing of the sort, and we need address this objection only briefly.

Paragraph B of Listing 12.05 provides that a claimant can meet the Listing's severity threshold by demonstrating a "valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 12.05B. The record contains nine different IQ scores for Plaintiff—the result of examinations dating from childhood to near the present day. Docket No. 31 at 13. Six of these scores show scores of 60 or higher, and three show scores of 59 or below. ALJs are not required to accept all reported IQ scores as "valid"; he may discount scores inconsistent with his determination of the claimant's intellectual functioning based on other available evidence, and he may resolve discrepancies between different scores. *See Lax v. Astrue,* 489 F.3d 1080 (10th Cir. 2007); *Miles v. Barnhart*, 374 F.3d 694 (8th Cir. 2004).

Here, the Magistrate Judge declined to credit the scores showing an IQ of 59 or less as "valid," finding them incompatible with the other evidence of Plaintiff's functioning. *See* R. 189 ("While it is possible to intentionally score low, it would be highly unlikely for a person to consistently score above her actual level of functioning."). With respect to Dr. Vandivier's examination report yielding a "provisional" IQ of 58, the ALJ chose not to accept the score as valid because of indications that it reflected a low effort level and because of its inconsistency with Plaintiff's ability to live alone and care for children at the time of the test.[2] Far from improperly "making an independent review of the evidence," as Plaintiff asserts, the Magistrate Judge merely noted that the ALJ's decision was not outside the bounds of his discretion. She summarized: "In essence, the ALJ found that Ms. Williams's earlier low IQ scores were not 'valid,' as required by Paragraph B, and substantial evidence supports his decision. Courts defer

---

[2] We agree with the Magistrate that this finding does not contradict this Court's earlier ruling that the first ALJ to hear this case had erred in treating a provisional score as *per se* invalid. *See Williams v. Astrue*, No. 1:08-cv-1353-JMS-TAB, Docket No. 33 at 23.

to the Commissioner's resolutions of such conflicts in the evidence so long as they are supported by substantial evidence and, here, they are." Docket No. 31 at 14.  We agree.

Paragraph C of Listing 12.05 provides that a claimant can also meet the Listing's severity threshold if he or she possesses "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 12.05C.  In her initial brief in opposition to the ALJ's ruling, Plaintiff contended that the "evidence proved that her mental retardation met the requirements for Listing . . . 12.05C" because she had an IQ in the required range and "obesity and low back pain radiating down leg limiting standing and walking." Docket No. 20 at 18.  In support of this claim, Plaintiff referred to evidence that Ms. Williams weighed 220 pounds as of a 2004 hospital visit, and that she visited an emergency room in 2009 because of lower back pain.  R. 291, 324–325.  She then pronounced in conclusory fashion that the ALJ's ruling was "incomplete, contrary to the evidence, and erroneous as a matter of law," without engaging in any way with the substance of the ALJ's ruling or his reasoning in support of it.  Docket No. 20 at 18.

In her Report and Recommendation, the Magistrate Judge took note of the deficient nature of Plaintiff's argument with regard to Paragraph C: "Because she does not address, let alone explain any errors in, the ALJ's articulated reasons for rejecting her obesity and low-back pain as severe impairments, she has failed to support her assertion of error with any argument." We agree with the Magistrate Judge's assessment.  We further conclude that Plaintiff's objection to the Report and Recommendation on the ground that it impermissibly re-weighed the evidence is wholly meritless.

In sum, the ALJ found that Plaintiff satisfied neither the preliminary "diagnostic criteria" for the intellectual disability listing nor any of its four more specific severity thresholds. We agree with the Magistrate Judge that we have no basis for disturbing these findings, which are supported by substantial evidence. Plaintiff's objections to the Report and Recommendation either misconstrue the applicable law or misread the Magistrate Judge's explanations. For these reasons, we reject Plaintiff's claims regarding "Step 3" of the disability analysis.

**B.      The ALJ's Credibility Determination**

The Magistrate Judge found that Plaintiff had failed to show error in the ALJ's credibility determination. Plaintiff now argues that, contrary to the finding of the Magistrate Judge, the ALJ's credibility determination did not meet the standard promulgated in Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012), which held that the inclusion of "template" language can be harmless, "if the ALJ has otherwise explained his conclusion adequately." Rather than challenging the ALJ's four page explanation for his negative credibility determination, Plaintiff asserts only that because "the ALJ mischaracterized that there was only one I.Q. below 60 in the record, when there was a total of five." Such a bare assertion does not provide a basis upon which the Court will find error.

Moreover, as discussed above, the ALJ did not "ignore" Plaintiff's below-60 IQ scores. Rather, he stated that the record does not establish a "valid I.Q. of 59 or less" because of their inconsistency with other I.Q. scores and other evidence in the record showing Plaintiff's level of adaptive functioning. R. at 189. As stated by the Magistrate Judge, we defer to the Commissioner to resolve such conflicts in the evidence as long as those resolutions are supported by substantial evidence. Plaintiff has not argued, let alone directed us to any evidence that shows

that the Commissioner's decision regarding the validity of these I.Q. scores was in error. Thus, she has failed to establish any error with regard to the ALJ's credibility determination.

### C.      The ALJ's Step Five Determination

Plaintiff argues that the ALJ's Step Five determination was erroneous because he failed to inform the vocational expert of all of her impairments. Specifically, Plaintiff argues that the RFC and hypothetical question posed to the vocational expert did not accurately describe her impairments because the ALJ did not include the following limitation as acknowledged by the ALJ: "As a guard against the possibility of mental fatigue, she would need *additional* break periods, in *addition* to her regular break and lunch periods." R. at 195 (emphasis added). Instead, the RFC and the question posed to the vocational expert indicated that Plaintiff could work "for periods of two hours, with a break of 10 to 15 minutes between each period of work." R. at 195-96, 381.

We find that Plaintiff's objection lacks merit. First, Plaintiff did not develop this argument until her Reply brief presented to the Magistrate Judge. Therefore, the argument was waived. Second, Plaintiff directs us to no authority indicating that there is an inconsistency between the ALJ's finding that Plaintiff needs "additional" breaks and those afforded to her in the ALJ's RFC and the hypothetical question posed to the vocational expert.

### Conclusion

We find that Plaintiff's objections to the Report and Recommendation of the Magistrate Judge lack merit. Therefore, Plaintiff's objections are OVERRULED and we adopt the recommendations set forth in the Magistrate Judge's Report and Recommendation. Final judgment shall enter in favor of Defendant and against Plaintiff.

11

IT IS SO ORDERED.

Date: 03/31/2014

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov